1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WANDA CHURCH,

11           Plaintiff,                          No. 2:11-cv-01236 KJN

12       v.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,

14

15           Defendant.                          ORDER
     _____/

16           Plaintiff Wanda Joyce Church ("plaintiff"), who is represented by counsel and

17   proceeding in forma pauperis, seeks judicial review of a final decision of the Commissioner of

18   Social Security ("Commissioner" or "defendant") denying plaintiff's application for

19   Supplemental Security Income benefits under Title XVI of the Social Security Act ("Act").[1]

20           In her motion for summary judgment, plaintiff contends that the administrative

21   law judge ("ALJ") in this case erred: (1) by not finding "changed circumstances" sufficient to

22   rebut the presumption of continuing non-disability in light of "significant changes in plaintiff's

23   medications" for her mental issues (Mot. for Summ. J. at 8-9); (2) by rejecting the opinion of

24

25       [1] This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented (Dkt. Nos.
26   10, 15) to proceed before a United States Magistrate Judge.  28 U.S.C. § 636(c)(1); Fed. R. Civ.
     P. 73; E. Dist. Local Rule 301.

1  plaintiff's treating physician, Dr. Demetra Stamm, given that Dr. Stamm's opinion was

2  "consistent with" the treating records of other physicians (id. at 14-15); (3) by rejecting the

3  opinion of treating physician Dr. Stamm given that his opinion is bolstered by a record showing

4  "significant changes in [plaintiff's] medication," such as an increase in dosage of Abilify for

5  mood swings (id. at 16-17); (4) by giving weight to the opinions of consultative and non-

6  examining physicians who were unaware of and thus "failed to consider" plaintiff's "large

7  increase in dosage of Abilify from 8/18/09 to 3/4/10" and other records (id. at 17, 20); (5) by

8  crediting the opinion of consultive examiner Dr. Cross although she is a psychologist rather than

9  a psychiatrist, although she "failed to consider" plaintiff's increased dosage of Abilify, and

10  although plaintiff disputes Dr. Kara Cross' interpretation of a memory test she administered to

11  plaintiff (id. at 19-20); and (6) by rejecting the vocational expert's opinion that, in response to

12  questioning by plaintiff's counsel, plaintiff would be unable to perform past relevant work (id. at

13  20-21).  Plaintiff also argues that the Appeals Counsel erred for these same reasons when it failed

14  to remand the matter to the ALJ.  (Id. at 21-22.)

15         Defendant filed an opposition to plaintiff's motion and a cross-motion for

16  summary judgment.  (Def.'s Opp'n & Cross-Motion for Summ. J. ("Opp'n"), Dkt. No. 20.)

17  Plaintiff did not file a reply memorandum in support of her motion.  For the reasons stated

18  below, the court denies plaintiff's motion for summary judgment and grants the Commissioner's

19  cross-motion for summary judgment.

20  I.     BACKGROUND

21         This case differs from the typical Social Security case because plaintiff previously

22  applied for and was denied social security benefits on two other occasions.[2]  As discussed below,

23

24         [2]  Because the parties are familiar with the factual background of this case, including
       plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
25     facts related to plaintiff's impairments and medical history will be addressed only insofar as they
       are relevant to the issues presented by the parties' respective motions.

26

the existence of a prior denial of benefits triggers a presumption of continuing non-disability,

which is at issue here.

        a.    *First ALJ Decision*

      On May 30, 2002, plaintiff filed an application for supplemental security income

benefits, which was denied initially and upon reconsideration (the "First Decision").[3]   (Admin.

---

      Additionally, to the extent the undersigned uses the present tense in referring to or describing plaintiff's alleged conditions or functional abilities, or the ALJ's or Appeals Council's characterizations of the same, the undersigned clarifies that such references are to plaintiff's conditions or functional abilities at the time of the ALJ's or Appeals Council's decision, unless otherwise indicated.

      [3]   Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq.  Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

      Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

      Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

      Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

      Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

      Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1  Record ("AR") 33.)  An ALJ issued a decision denying benefits on March 12, 2004.  (Id.)  The

2  ALJ issuing the First Decision found that plaintiff had severe impairments including "neck pain

3  and left upper extremity neuropathy" but that plaintiff "did not have a severe mental

4  impairment."  (AR 36-37.)

5              b.    *Second ALJ Decision*

6              On April 21, 2005, plaintiff filed another application for Supplemental Security

7  Income benefits, which was denied initially and upon reconsideration.  (AR 12.)  On November

8  14, 2007, an ALJ issued a decision denying benefits (the "Second Decision").  (Id.)  The ALJ

9  issuing the Second Decision applied the presumption of continuing non-disability, and found that

10  "new and material evidence" overcame that presumption with respect to physical impairments

11  but not mental impairments, and ultimately denied benefits because plaintiff could perform

12  sedentary work with certain limitations.  (AR 34, 36-38, 43.)  Specifically, the ALJ found that the

13  plaintiff's "mental impairments continue to be non-severe" given that "[t]reatment records

14  provide few objective mental status examination findings" and "[t]he record does not document

15  that the claimant has undergone mental health treatment."  (AR 37-38.)  The ALJ also found that

16  the record did not indicate that plaintiff's functioning was significantly impaired by any mental

17  disorder, and that there was no evidence of worsening in plaintiff's functioning since the prior

18  decision.  (AR 38.)  The Second Decision concluded that plaintiff had "severe" impairments of

19  "degenerative disc disease of the cervical spine and status post cervical fusion with related

20  degenerative joint disease of the left hip at the graft site."  (AR 36.)  The ALJ who issued the

21  Second Decision also found that plaintiff had the residual functional capacity ("RFC") to

22  "perform the full range of sedentary work."  (AR 38.)

23  ////

24

25          The claimant bears the burden of proof in the first four steps of the sequential evaluation
   process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26  evaluation process proceeds to step five.  Id.

c.    *Third ALJ Decision*

On August 14, 2008, plaintiff filed a third application for Supplemental Security Income benefits, which was initially denied on November 5, 2008, and upon reconsideration on January 22, 2009.  (AR 12.)  Plaintiff requested a hearing before an ALJ, and the ALJ conducted the hearing on October 26, 2009.  (AR 12.)  Plaintiff was represented by counsel at the hearing and testified.  (AR 12, 48-60.)  A vocational expert, Ms. Susan L. Creighton-Clavel, also testified at the hearing.  (AR 12, 60-64.)  On February 18, 2010, an ALJ issued a decision denying benefits ("Third Decision").  (AR 12-23.)  This Third Decision is the decision at issue in this case.

The ALJ issuing the Third Decision applied the presumption of continuing non-disability, found that it had not been rebutted (AR 23), and adopted the RFC assessment from the Second Decision.  (AR 21.)  The ALJ issuing the Third Decision also found that "[a]s in the previous ALJ decision . . . the claimant has the following severe impairments: status post cervical fusion with residual degenerative disc disease and degenerative joint disease of the left hip at the graft site."  (AR 15.)

The Third Decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  (AR 1-8.)  Plaintiff subsequently filed this action, which arises from the Third Decision.

B.    Summary of the ALJ's Findings in the Third Decision

In issuing the Third Decision, the ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful employment since August 14, 2008, the alleged date of disability onset.  (AR 15.)

At step two, the ALJ "adopt[ed] the prior ALJ decision" and found that plaintiff had "severe" impairments of "status post cervical fusion with residual degenerative disc disease and degenerative joint disease of the left hip at the graft site."  (Id.)  The ALJ clarified that "the

1    presumption of continuing non-disability has not been rebutted by evidence of new impairments

2    that were not evaluated in the prior decision."  (AR 13.)  The ALJ found that plaintiff's

3    "medically determinable mental impairments of depression, post-traumatic stress disorder, and

4    anxiety, considered singly and in combination, do not cause more than minimal limitation in the

5    claimant's ability to perform basic mental work activities and are therefore nonsevere."[4]  (AR

6    15.)

7                    In determining that there was no evidence supporting the presence of an

8    increasingly severe mental impairment or a new impairment, the ALJ analyzed whether

9    plaintiff's evidence met the "Paragraph B" criteria for evaluating mental disorders.[5]  (Id.)  In

10

11            [4]  While the ALJ assessed medical evidence regarding plaintiff's physical impairments,
      neither party takes issue with the ALJ's conclusions regarding plaintiff's physical condition and
12    the limitations arising therefrom. Plaintiff does not contest the ALJ's finding that plaintiff has the
      following severe *physical* impairments: "status post cervical fusion with residual degenerative
13    disc disease and degenerative joint disease of the left hip at the graft site."  (Mot. for Summ. J. at
      2.)  Plaintiff does not contest that her physical impairments result in "the residual functional
14    capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a).  She can perform
      sedentary work with the use of a cane for prolonged ambulation or for walking over uneven
15    terrain.  She is not able to climb ladders, ropes, or scaffolds.  She is able to frequently climb
      ramps and stairs.  She is able to occasionally stoop, kneel, crouch, and crawl."  (Mot. for Summ.
16    J. at 2 (citing AR 17).)  Because plaintiff does not contest the ALJ's findings as to her physical
      impairments and limitations, those physical impairments will not be addressed herein.
17
              [5]  In order to qualify as disabled at step 3, a claimant must meet or exceed the listed
18    impairments in Appendix 1 to Part 404 of the regulations.  Holohan v. Massanari, 246 F.3d 1195,
      1203 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d).)  In order to meet a listing in Appendix 1
19    for a mental disorder, a claimant must satisfy criteria in Paragraph A of the listings, which
      medically substantiate the presence of a mental disorder, and the criteria in Paragraphs B or C,
20    which describe the functional limitations associated with the disorder which are incompatible
      with the ability to work.  Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.)  In order to
21    satisfy the criteria in paragraph B, the claimant's paragraph A impairments must result "in at
      least two of the following":
22
                        1. Marked restriction in the activities of daily living; or
23                      2. Marked difficulties in maintaining social functioning; or
                        3. Deficiencies of concentration, persistence or pace resulting in
24                         frequent failure to complete tasks in a timely manner (in work
                           settings or elsewhere); or
25                      4. Repeated episodes of deterioration or decompensation in work
                           or work-like settings which cause the individual to withdraw
26                         from that situation or experience exacerbation of signs and

1    connection with that analysis, the ALJ rejected the opinion of treating physician Dr. Stamm, who

2    opined in part that plaintiff had a "fair" ability to understand and remember short, simple

3    instructions, and that plaintiff had "poor" understanding and remembering of detailed or complex

4    instructions.  (AR 16 (citing AR 377-78 (Dr. Stamm's Medical Source Statement – Mental, dated

5    Sept. 29, 2009).)

6           The ALJ rejected Dr. Stamm's opinion on grounds that it was unsupported by

7    objective medical evidence in the record and because it conflicted with Dr. Stamm's own treating

8    note, which chronicled plaintiff's history of "mild" mood swings and depression.  The ALJ also

9    rejected the opinion in light of evidence that plaintiff's medication controlled her mental

10   condition, and given the lack of evidence that plaintiff's mental functioning was worsening.  (AR

11   16-17.)

12          The ALJ also found that, contrary to Dr. Stamm's conclusions, conclusions by

13   state agency sources reflected that plaintiff's "mental impairments were not severe" and that the

14   sources "assessed no mental functional limitations."  (AR 15.)  The ALJ described a lack of

15   evidence of ongoing treatment and the presence of evidence reflecting plaintiff's "generally good

16   functioning and activities of daily living."  (Id.)  The ALJ explained that plaintiff's treatment

17   records "did not contain observations that would indicate she had a severe mental impairment."

18   (AR 15-16.)  The ALJ further explained that the record reflects only "mild" limitations in

19   plaintiff's functioning and reflects "no psychiatric hospitalizations, no 5150-holds," and no

20   "periods of decompensation of extended duration."  (Id.)  The ALJ concluded that plaintiff's

21   alleged mental impairments were "nonsevere" given that, after rejecting Dr. Stamm's opinion,

22   the record revealed "no more than a 'mild'" limitation as to the first three functional areas of the

23   Paragraph B criteria, and "no" episodes of decompensation of extended duration as to the fourth

24   _____

          symptoms (which may include deterioration of adaptive

25        behaviors).

26   Holohan, 246 F.3d at 1203-04 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04B; 12.06B.)

                                                    7

1 functional area of that criteria.  (AR 17.)  The ALJ concluded that plaintiff, at most, had only

2 "nonsevere" mental impairments.  (Id.)

3       At step three, the ALJ determined that plaintiff did not have an impairment or

4 combination of impairments that met or medically equaled one of the impairments listed in the

5 applicable regulations.  (Id. (citing 20 C.F.R. pt. 404, subpt. P, app. 1).)

6       Prior to reaching step four of the analysis, the ALJ assessed plaintiff's RFC as

7 follows:

8      After careful consideration of the entire record, the undersigned finds the
     claimant has the residual functional capacity to perform sedentary work as
9      defined in 20 C.F.R. 416.967(a).  She can perform sedentary work with the
     use of a cane for prolonged ambulation or for walking on uneven terrain.
10      She is not able to climb ladders, ropes, or scaffolds.  She is able to
     frequently climb ramps and stairs.  She is able to occasionally stoop, kneel,
11      crouch, and crawl.

12 (Id.)  The ALJ adopted the RFC assessment from the Second Decision, explicitly finding it

13 "consistent with" and "supported by" the "specific medical evidence" and "consultative

14 evaluation findings and the State agency determinations in the current case."  (AR 21-22.)  The

15 ALJ rejected Dr. Stamm's medical source statements because they were "not consistent with the

16 objective medical findings, treatment notes, and especially concerning [plaintiff's] mental health

17 issues."  (Id.)  The ALJ also noted that plaintiff "denied depression after her medical source

18 statement was completed."  (AR 22.)

19       In assessing plaintiff's RFC, the ALJ also addressed plaintiff's testimony and

20 found that plaintiff was not credible to the extent that her testimony concerning the intensity,

21 persistence and limiting effects of her symptoms conflicted with the ALJ's RFC assessment.[6]

22 (AR 21.)

23       In assessing plaintiff's RFC, the ALJ also addressed the medical evidence relating

24 to plaintiff's alleged mental impairments and resulting functional limitations.  The ALJ noted

25

26     [6] Plaintiff has not challenged this adverse credibility determination.  (See generally Mot.
for Summ. J.)

1   that plaintiff "received treatment for mental health issues of Bi Polar, PTSD, anxiety, and

2   depression" since 2001.  (AR 20.)  The ALJ also noted that plaintiff "has been treated for

3   depression for about 4 years, and bi polar for 2 years."  (Id.)  The ALJ discussed the fact that

4   plaintiff's medications — such as Abilify, Lexapro, and Topomax — reportedly "alleviate"

5   plaintiff's problems.  (Id.)  The ALJ noted that plaintiff was unable to "testify as to improvement

6   of her mental health issues with her medications [because] [h]er medications were being changed

7   around and she was in an adjustment period."  (AR 21.)  The ALJ explained, however, that

8   plaintiff "initially said her medications were helping her mental health issues in that she did not

9   have as many 'ups (being euphoric) and downs'" and that plaintiff also stated "that she could not

10  testify as to the effects of her medications or whether they helped her because her medication

11  regimen had recently been changed."  (Id.)

12          Also in assessing plaintiff's RFC, the ALJ again rejected Dr. Stamm's Medical

13  Source Statement for being inconsistent with the objective medical findings, Dr. Stamm's own

14  treatment notes, and with plaintiff's own denial of depression after the medical source statement

15  was completed.  (AR 22 (citing AR 377-78 (Dr. Stamm's Medical Source Statement – Mental,

16  dated Sept. 29, 2009)).)  The ALJ rejected Dr. Stamm's ultimate conclusions as to plaintiff's

17  functional limitations and instead credited the conclusions of Consultive Examiner Dr. Cross and

18  State agency nonexamining physician Dr. Harrison.  (AR 16.)  Dr. Cross conducted a clinical

19  examination of plaintiff that involved memory testing, among other tests.  (Id.)  Dr. Cross opined

20  that plaintiff was capable of being employed in a simple, repetitive task work setting, capable of

21  understanding and following simple instructions, able to set reasonable persistence and pace, and

22  able to maintain a 40 hours workweek and an eight hour workday, all despite having difficulty

23  with remote recall and a history of bipolar illness.  (Id. (citing AR 269-74 (Dr. Cross' Complete

24  Mental Evaluation, dated Oct. 5, 2008).)  Dr. Harrison determined, on review of plaintiff's

25  medical records, that plaintiff had only "mild" functional limitations (AR 288, 290 (Dr.

26  ////

9

1   Harrison's Psychiatric Review Technique, dated Oct. 23, 2008).  (AR 16 (citing AR 280-90).)[7]

2   Having assessed plaintiff's RFC, the ALJ found at step four that given plaintiff's

3   limitations, plaintiff "is capable of performing her past relevant work as a Clerical Worker."  (AR

4   22.)  Because the ALJ found that plaintiff could perform such work, the ALJ also found that

5   plaintiff has not been under a disability as defined in the Social Security Act.  (AR 22-23.)  The

6   ALJ noted that during the hearing, plaintiff's counsel questioned the vocational expert and added

7   "additional mental limitations" to a hypothetical, but found that "the facts presented in

8   [plaintiff's counsel's] additional questions are not supported by the record" and therefore rejected

9   the expert's responses to those questions.  (Id.)  Because the ALJ determined at step four that

10  plaintiff could perform her past relevant work, the ALJ did not proceed to step five.  (Id.)

11  II.    STANDARDS OF REVIEW

12  The court reviews the Commissioner's decision to determine whether it is (1) free

13  of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

14  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

15  Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v.

16  Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means

17  more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

18  reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc.

19  Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

20  1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690.  "The ALJ is responsible for

21  determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

22  Andrews, 53 F.3d at 1039; accord Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)

23

24  [7] Plaintiff argues that the ALJ erred in rejecting Dr. Stamm's conclusions even though
they were "consistent with the treating records and observations of" several other medical
providers who have each "treated plaintiff for Bipolar Disorder and PTSD."  (Mot. for Summ. J.

25  at 15.)  However, the record reflects that Dr. Stamm was the only treating physician who actually
rendered an opinion as to *functional limitations* resulting from plaintiff's mental impairments.

26  (AR 377-78 (Dr. Stamm's Medical Source Statement – Mental, dated Sept. 29, 2009)).

1   ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

2   Findings of fact that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g);

3   see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a

4   whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the

5   ALJ's."  Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198

6   (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the

7   ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.

8   2005)).  However, the court "must consider the entire record as a whole and may not affirm

9   simply by isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198

10  (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v.

11  Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "To determine whether substantial evidence

12  supports the ALJ's decision, [a court] review[s] the administrative record as a whole, weighing

13  both the evidence that supports and that which detracts from the ALJ's conclusion."  Andrews,

14  53 F.3d at 1039.

15        The court's review is constrained to the reasons asserted by the ALJ in the ALJ's

16  decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons

17  provided by the ALJ in the disability determination and may not affirm the ALJ on a ground

18  upon which he did not rely."); accord Tommasetti, 533 F.3d at 1039 n.2 (declining to review

19  reasons provided by the district court in support of the ALJ's credibility decision that were not

20  "expressly relied on" by the ALJ during the administrative proceedings).

21        In cases involving a prior final agency decision of non-disability where the

22  claimant subsequently files a new application for benefits, the prior administrative decision

23  triggers a presumption of continuing non-disability.  Chavez v. Bowen, 844 F.2d 691, 693-64

24  (9th Cir. 1988) (where ALJ made "no reference" to prior ALJ's decision and "failed to consider

25  the first judge's findings," the "principles of res judicata made binding the first judge's

26  ////

determination").[8]  In order to overcome this presumption of continuing non-disability, the

claimant "must prove 'changed circumstances' indicating a greater disability." Id. (because

defendant failed to identify "new" information that "had not been presented to the first" ALJ, it

was error for the second ALJ to have "reopened the prior [ALJ's] determinations concerning the

claimant's ability to perform his past relevant work") (quoting Taylor v. Heckler, 765 F.2d 872,

875 (9th Cir. 1985)); Ellis v. Astrue, No. 2:10–cv–01201–LDG–GWF, 2011 WL 5877490 at *5-

9 (D. Nev. Sept. 28, 2011) (unpublished) (ALJ did not err in determining that plaintiff had

rebutted the presumption of continuing non-disability and, nonetheless, did not err in adopting

the RFC assessment from the prior ALJ's decision, because there was no "new and material

---

[8]  Social Security Acquiescence Ruling 97–4(9), 1997 WL 742758, at *1-3 (Dec. 3, 1997) ("AR 97-4(9)") provides guidance on the Chavez decision:

> In order to rebut the presumption of continuing nondisability, a claimant must prove "changed circumstances" indicating a greater disability.  In addition, the court [in Chavez] indicated that where the claimant rebuts the presumption by proving a changed circumstance, principles of res judicata require that certain findings contained in the final decision by the ALJ on the prior claim must be given some res judicata consideration in determining whether the claimant is disabled . . . The court concluded that where the final decision on the prior claim, which found the claimant not disabled, contained findings of the claimant's residual functional capacity, education, and work experience, [the agency] may not make different finding in adjudicating the subsequent disability unless there is new and material evidence . . .

Although the presence of additional impairments rebuts the general presumption of non-disability, that alone is insufficient to reopen the specific findings of the prior decision.  Chavez, 844 F.2d at 694.  Instead, there must be "new and material" evidence relating to each specific finding.  See AR 97–4(9).

Acquiescence Rulings are Social Security Administration policy statements issued in response to the Court of Appeals' holdings, and they "describe the administrative case and the court decision, identify the issue(s) involved, and explain how we will apply the holding, including, as necessary, how the holding relates to other decisions within the applicable circuit." 20 C.F.R. § 404.985(b).  They are binding on the Social Security Administration, 20 C.F.R. § 402.35(b)(2); and are accorded deference by reviewing courts.  McNabb v. Barnhart, 340 F.3d 943, 944-45 (9th Cir. 2003).

1    evidence" concerning the claimant's functional limitations and because the ALJ gave clear and

2    convincing reasons for not relying on the opinion of claimant's treating physician) (citing

3    <u>Chavez</u>).  "Changed circumstances" that can rebut a presumption of continuing non-disability

4    include the existence of a "new" impairment and/or an "increase in the severity" of an

5    impairment, either one of which affects the claimant's residual functional capacity.  <u>Lester</u>, 81

6    F.2d at 827-28.  If the claimant fails to rebut the presumption of continuing non-disability, it is

7    presumed that the claimant "continued to be able to work after" the prior ALJ's decision.  <u>Id.</u>

8    (quoting <u>Miller v. Heckler</u>, 770 F.2d 845, 848 (9th Cir. 1985)).

9    III.    <u>DISCUSSION</u>

10            A.    <u>Changed Circumstances And Presumption Of Continuing Non-Disability</u>

11                 Plaintiff's first contention is somewhat unclear in that it is styled as a distinct

12   argument with its own heading, but in substance appears to be more of an introduction to the

13   remainder of plaintiff's brief.  (Mot. for Summ. J. at 9.)  To the extent it can be construed as a

14   distinct argument, the argument is this: that the ALJ case erred by not finding "changed

15   circumstances" sufficient to rebut the presumption of continuing non-disability in light of

16   "significant changes in plaintiff's medications" for her mental issues.  (Mot. for Summ. J. at 9.)

17   Plaintiff contends that in the period after the Second Decision was issued (i.e., after November

18   14, 2007), plaintiff's physicians increased the prescribed dosage of "Abilify," a medication used

19   to treat plaintiff's mental conditions.  (Mot. for Summ. J. at 9.)  In a nutshell, plaintiff argues that

20   being prescribed an increased dosage of medication establishes that plaintiff's mental conditions

21   have worsened since the Second Decision.[9]  (<u>Id.</u>)

22   ////

23

24        [9]  In any event, plaintiff spends half a page on this argument (Mot. for Summ. J. at 9) and
     spends the rest of her brief attacking the ALJ's analysis of the medical opinions in the record.
25   The undersigned proceeds to those remaining arguments.  However, the undersigned notes that
     plaintiff's assumption about the significance of an increased dosage of Abilify permeates nearly
26   every argument plaintiff makes.

1    Plaintiff is correct that the medical record reflects fluctuation in prescribed

2  dosages of plaintiff's medication.  The record reflects that various physicians prescribed various

3  combinations of medications to plaintiff.  From July 2008 to March 2010, physicians prescribed

4  combinations of the following drugs in efforts to treat plaintiff's mental conditions:  Celexa,

5  Lexapro, Abilify, Topomax/Topiramate, and Wellbutrin.  (AR 219 (Celexa, Lexapro); 269

6  (Celexa, Abilify, Wellbutrin); 276 (Abilify, Wellbutrin); 335 (Abilify, Wellbutrin); 344-53

7  (Lexapro, Abilify, Wellbutrin); 354-56 (Lexapro, Abilify, Wellbutrin); 385, 387, 389, 395, 399,

8  405, 407, 413, 415, 417, 419 (Abilify, Lexapro, Topomax/Topiramate).)  As plaintiff notes,

9  various physicians prescribed the drug "Abilify" to combat plaintiff's mood swings and mental

10  impairments.  (E.g., AR 354, 356, 385, 399, 401, 407, 413, 415, 417, 419.)  Plaintiff argues that,

11  because the record shows that "plaintiff's prescription of Abilify was increased within a six

12  month period from 5 mg to 30 mg in incremental changes in order to try to stabilize her mood

13  swings" (Mot. for Summ. J. at 16), this increase necessarily reveals a worsening in plaintiff's

14  mental conditions, and that the ALJ therefore erred in not finding a "changed circumstance" that

15  rebuts the presumption of continuing non-disability.  (Id. at 9, 16-19.)

16    Plaintiff's argument is not well-taken.  To the extent that plaintiff argues that, as a

17  matter of law, an increase in medications is itself sufficient to show changed circumstances and

18  rebut the presumption of continuing non-disability, plaintiff has not supported that argument.

19  Plaintiff cites no authorities suggesting that increasing a medication dosage itself amounts to a

20  "changed circumstance" sufficient to rebut the presumption.  Plaintiff also cites no authorities

21  supporting her assumption that an increase in medication necessarily indicates an increase as to

22  the severity of the condition the medication is designed to treat.  Absent authority to the contrary,

23  increased medication does not necessarily mean increased severity.  Moreover, there are no

24  medical opinions in the record explaining that, in this particular case, an increase in dosage of the

25  drug Abilify reflects an increase in the severity of plaintiff's mental impairments.  At most,

26  ////

1    plaintiff's treating physician[10] opined that plaintiff had a "poor" ability to understand complex

2    instructions and a "poor" ability to concentrate — but he did not opine that plaintiff's mental

3    conditions had increased (or were increasing) in severity.  (AR 377-78.)

4              B.     Treating Physician's Opinion vs. Consultative Examining Physician's
                      Opinion

5

6              Plaintiff contends that the ALJ erred by rejecting the opinion of plaintiff's treating

7    physician, Dr. Stamm.  Plaintiff argues that Dr. Stamm's opinion was "consistent with" the

8    treating records of other physicians (Mot. for Summ. J. at 14-15), and that his opinion is

9    bolstered by a record showing "significant changes in [plaintiff's] medication," such as an

10   increase in dosage of Abilify for mood swings.  (Mot. for Summ. J. at 16-17.)  Plaintiff also

11   argues the ALJ erred in giving weight to the opinions of consultative and non-examining

12   physicians who were unaware of and thus "failed to consider" plaintiff's "large increase in

13   dosage of Abilify from 8/18/09 to 3/4/10" and other records (Mot. for Summ. J. at 17, 20), and

14   by crediting the opinion of consultative examiner Dr. Cross although she is a psychologist and

15   not a psychiatrist, although she "failed to consider" plaintiff's increased dosage of Abilify, and

16   although plaintiff disputes Dr. Cross' interpretation of a memory test administered to plaintiff.

17   The undersigned addresses each of these arguments in turn.

18             1.     *The ALJ Did Not Err In Rejecting Dr. Stamm's Opinion*

19             The ALJ rejected the opinion of plaintiff's treating physician, Dr. Stamm.  (AR

20   16-17.)  In a two-page, check-the-box worksheet, Dr. Stamm checked boxes indicating that

21   plaintiff's mental impairments gave her a "poor" ability to perform various work-related tasks,

22   such as: understanding complex instructions, remembering complex instructions, concentrating,

23   working without supervision, and adapting to changes in the workplace.  (AR 377-78.)  Dr.

24   Stamm also checked boxes indicating that plaintiff's mental impairments gave her a "fair" ability

25

26             [10]  The opinion of plaintiff's treating physician, Dr. Stamm, is addressed below.

1   to: understand and remember short, simple instructions, and interact with others, among other

2   things.  (Id.)  Dr. Stamm did not add any explanations to support her decision to check the boxes

3   the way she did.  (Id.)

4           Plaintiff contends that the ALJ case erred by rejecting Dr. Stamm's opinion, in

5   part because it was "consistent with" the treating records of other physicians.  (Mot. for Summ. J.

6   at 14-15.)  Plaintiff argues that the medical records show "a pattern of mood swings consistent

7   with [plaintiff's] bipolar disorder" (id. at 15), and that plaintiff "continues to have significant

8   mood changes despite significant changes to her medicine" such that "the treating records

9   support Dr. Stamm's limitations on [p]laintiff's residual functions."  (Id. at 19.)  In other words,

10  plaintiff's argument is that Dr. Stamm's conclusions find other support in the record, such that

11  the ALJ should not have rejected those conclusions.  (AR 19.)  However, as described below, the

12  issue is not whether Dr. Stamm's opinions find additional support in the record, but whether the

13  ALJ stated specific, legitimate reasons for rejecting Dr. Stamm's opinion, and whether those

14  stated reasons are supported by substantial evidence.  See Lester, 81 F.3d at 830-31; accord

15  Valentine, 574 F.3d at 692.

16          The medical opinions of three types of medical sources are recognized in social

17  security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but

18  do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

19  claimant (nonexamining physicians)."  Lester, 81 F.3d at 830.  Generally, a treating physician's

20  opinion should be accorded more weight than opinions of doctors who did not treat the claimant,

21  and an examining physician's opinion is entitled to greater weight than a non-examining

22  physician's opinion.  Id.  Where a treating or examining physician's opinion is uncontradicted by

23  another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the

24  treating physician's ultimate conclusions.  Id.  If the treating or examining doctor's medical

25  opinion is contradicted by another doctor, the Commissioner must provide "specific and

26  legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by

16

substantial evidence in the record.  Id. at 830-31; accord Valentine, 574 F.3d at 692.  "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'"  Tommasetti, 533 F.3d at 1041 (modification in original) (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  Further, if a treating physician's opinion is brief, conclusory, or inadequately supported by clinical findings, the ALJ need not accept that opinion.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  "[W]hen an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are 'substantial evidence.'"  Orn, 495 F.3d at 632 (internal quotation marks omitted).[11]

Contradictions between a physician's functional assessment and his or her objective medical findings constitute a legitimate reason for an ALJ to discount or reject that physician's opinion.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that a discrepancy between a physician's observations and functional assessment to be a clear and convincing reason for an ALJ to reject that physician's medical opinion) (citing Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989)).  In other words, an ALJ is entitled to discount a treating physician's opinion in light of conflicting evidence, and conflicting evidence may take the form of an examining physician's opinion or a "contradiction" between a physician's treatment notes and her ultimate opinion.  E.g., Lester, 81 F.3d at 830; Valentine, 574 F.3d at 692-93 (holding that the ALJ's identification of a "a contradiction" between treating the physician's opinion and treatment progress reports constituted a specific and legitimate reason for rejecting the opinion).  Similarly, an ALJ need not accept the brief and conclusory findings of a treating physician.  See Thomas, 278 F.3d at 957.

////

---

[11] "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence [citation] or (2) findings based on objective medical tests that the treating physician has not herself considered."  Orn, 495 F.3d at 631 (citations omitted).

1          Here, Dr. Stamm's opinion (AR 377-78) was contradicted by that of another

2   doctor, namely, examining physician Dr. Cross (AR 269-74).  Therefore, in order to properly

3   reject Dr. Stamm's opinion the ALJ needed to provide "specific and legitimate" reasons

4   supported by substantial evidence.  See Lester, 81 F.3d at 830-31; Valentine, 574 F.3d at 692.

5   Dr. Cross' opinion was based on her own clinical findings and can therefore itself constitute

6   substantial evidence.  See Orn, 495 F.3d at 632.  Dr. Cross' opinion is discussed further below.

7          The undersigned finds that the ALJ gave specific, legitimate reasons for rejecting

8   Dr. Stamm's opinion.  (AR 16-17, 22.)  In rejecting Dr. Stamm's opinion, the ALJ first described

9   the conflicting opinion of Dr. Cross, who performed a consultative mental examination that

10  involved testing plaintiff's memory and concluded that plaintiff's concentration was "not

11  impaired," that plaintiff could understand and follow simple instructions, and that plaintiff could

12  be employed in a simple, repetitive work setting for forty hours per week.  (AR 16, 269-74.)  The

13  ALJ then summarized Dr. Stamm's opinion that plaintiff had only a "poor" ability to understand

14  and remember instructions and a "poor" ability to concentrate.  (Id.).  See Valentine, 574 F.3d at

15  692; Tommasetti, 533 F.3d at 1041.  The ALJ reasoned that Dr. Stamm's conclusions were not

16  supported by the "objective medical evidence" (AR 16-17).  See Thomas, 278 F.3d at 957 (ALJ

17  need not accept brief and conclusory findings).  The ALJ reasoned that Dr. Stamm's "own

18  treating notes" contradicted his conclusions, in that the notes chronicled plaintiff's "history of

19  'mild' mood swings and depression" and belied an assessment that plaintiff had only "poor"

20  abilities to perform work-related tasks (AR 16).  See Bayliss, 427 F.3d at 1216; Lester, 81 F.3d at

21  830; Valentine, 574 F.3d at 692-93; Thomas, 278 F.3d at 957.  The ALJ reasoned that the record

22  demonstrated that plaintiff's medication "controlled her mental condition" (AR 16).  Warre v.

23  Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be

24  controlled effectively with medication are not disabling for the purpose of determining eligibility

25  for . . . benefits.")  The ALJ concluded there was "no evidence of a worsening of the claimant's

26  mental functioning . . . since the prior ALJ decision."  (AR 17.)

1    The above-stated reasons are supported by substantial evidence in the record.  As

2    to a lack of "objective medical evidence" supporting Dr. Stamm's opinion that plaintiff had

3    "poor" abilities to perform certain work-related tasks, nothing in the record describes what

4    objective tests, if any, Dr. Stamm performed to assess plaintiff's functional abilities in a work

5    environment.  See Thomas, 278 F.3d at 957 (ALJ need not accept brief and conclusory findings).

6    Dr. Stamm's opinion took the form of a two-page, check-the-box worksheet and were not

7    supported with a single explanation or description of how Dr. Stamm formed his opinion about

8    plaintiff's functional limitations.  (AR 377-78.)

9    Similarly, as to Dr. Stamm's conclusions conflicting with his own treating notes,

10    substantial evidence in the record confirms this conflict.  (Compare AR 377-78 (Dr. Stamm's

11    opinion regarding plaintiff's "poor" abilities to perform work-related tasks) with 356 [& 413][12]

12    (Dr. Stamm's treatment notes dated Aug. 18, 2009) (plaintiff "feels medications have helped

13    reduce frequency of manic episodes"); 354 [& 407][13] (Dr. Stamm's treatment notes dated Sept. 1,

14    2009) ("She overall states she is doing well, doesn't feel depressed, good sleep"); 405 (Dr.

15    Stamm's treatment notes dated Oct. 9, 2009 (plaintiff is "taking meds daily without [side

16    effects]" and plaintiff "believes increased dose of Abilify . . . has helped her feel a bit more stable

17    in her mood").)  Dr. Stamm's treatment notes do not reflect more than mild symptoms.  Although

18    the notes reflect an increase in prescribed dosage of Abilify, the notes do not suggest that the

19    increase resulted from worsening symptoms.

20    Despite plaintiff's argument that great significance should be ascribed to the

21    increase in plaintiff's dosage of Abilify, substantial evidence supports the ALJ's determination

22    that plaintiff's medication controlled her symptoms.  See Warre, 439 F.3d at 1006; e.g., AR 356

23    [& 413] (Dr. Stamm's treatment notes dated Aug. 18, 2009) (notes plaintiff "feels medications

24    

25    [12]   AR 356 and 413 are duplicate documents.

26    [13]   AR 354 and 407 are also duplicate documents.

19

1   have helped reduce frequency of manic episodes"); 354 [& 407] (Dr. Stamm's treatment notes

2   dated Sept. 1, 2009) ("Plaintiff has been taking meds daily without [side effects]" and "has been

3   doing well, doesn't feel depressed"); 405 (Dr. Stamm's treatment notes dated Oct. 10, 2009)

4   (plaintiff has been "taking meds daily without [side effects]" and plaintiff "feels overall increased

5   dose of Abilify has helped stabilize her mood, therefore will increase this further and titrate down

6   Lexapro . . ." ).)

7           Although they reflect an increase in prescribed dosage of Abilify, the notes do not

8   suggest that the increase resulted from non-response to medication; instead, they reflect that the

9   medication was working and that the Abilify dosage increased for other reasons, such as a

10  decrease in dosage of Lexapro and concern about polypharmacy.  (AR 356 [& 413] (plaintiff

11  "feels medications have helped reduce frequency of manic episodes"); 354 [& 407] ("She overall

12  states she is doing well, doesn't feel depressed, good sleep" and "Continue Abilify . . . Continue

13  Lexapro 40 mg po q daily for now, do not want to make too many med changes at once"); 405

14  (plaintiff is "taking meds daily without [side effects]" and plaintiff "believes increased dose of

15  Abilify . . . has helped her feel a bit more stable in her mood" and ". . . concerned w/ possible

16  worsening obesity and contributing to polypharmacy, therefore alternatively choice [sic] to

17  further increase Abilify for mood stabilization . . . Increase Abilify [and] Decrease Lexapro").)

18          Further, as the ALJ noted, during the hearing plaintiff herself confirmed that the

19  medications alleviate her symptoms and stop her from becoming euphoric and not wanting to get

20  out of bed.  (AR 20 (citing hearing testimony).)  The fact that medications were adjusted upward

21  does not necessarily undercut this testimony.  Indeed, plaintiff testified that the medications were

22  helping her mental health issues in that she did not have as many "ups (being euphoric) and

23  downs," but plaintiff *also* testified about — and the ALJ expressly considered — the fact that

24  the medications were in an "adjustment period."  (AR 21.)  Where evidence "is susceptible to

25  more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Burch,

26  400 F.3d at 679.

1          In sum, the ALJ did not flatly ignore Dr. Stamm's opinion or dismiss it without

2    discussion; the ALJ analyzed that opinion, described the conflicting opinion of Dr. Cross,

3    explained the conflict between Dr. Stamm's treatment notes and his conclusions, found that

4    plaintiff's medications controlled her mental conditions, noted a lack of "objective medical

5    evidence" supporting Dr. Stamm's opinion, and ultimately found no "evidence of a worsening"

6    of plaintiff's mental functioning.  (AR 16-17.)  These reasons are borne out by the record.

7    Again, the issue before the undersigned is not whether Dr. Stamm's opinion finds additional

8    support in the record.  The issue is whether the ALJ gave specific, legitimate reasons for rejecting

9    that opinion and whether the ALJ's stated reasons are supported by substantial evidence.  See

10   Lester, 81 F.3d at 830-31; accord Valentine, 574 F.3d at 692.

11         Plaintiff emphasizes that treatment notes of other psychiatrists confirm an increase

12   in the prescribed dosage of the drug Abilify.  (Mot. for Summ. J. at 19.)  While plaintiff attempts

13   to frame an increase in the dosage of Abilify as evidence of a worsening mental impairment, the

14   increased dosage is not itself evidence of a worsening impairment.  While one of the ALJ's stated

15   reasons for rejected the opinion was a lack of support by "objective medical evidence" (AR 16),

16   that plaintiff can identify some *potential* objective support for Dr. Stamm's opinion does not

17   itself show the ALJ erred.

18         While the undersigned's review is limited to the reasons the ALJ provided within

19   the underlying decision, see Orn, 495 F.3d at 630, the undersigned must determine whether the

20   ALJ's decision is supported by substantial evidence in the entire record.  A review of the record

21   reflects that plaintiff's prescribed dosage of Abilify increased from 5 mg to 30 mg from August

22   2009 to March 2010, but this increase does not itself show plaintiff's mental conditions actually

23   increased in severity.  Plaintiff has not shown that any physician drew conclusions from the

24   increase in Abilify dosages.  Plaintiff has not shown that any physician determined that plaintiff's

25   mental conditions increased in severity and that increased Abilify dosages are the result.  Instead,

26   taking the medical record as a whole, the increase in prescribed Abilify dosages appears best

21

explained as an effort to find exactly the right "mix" of mental health medications for plaintiff

and to avoid polypharmacy.  (AR 405, 407, 413.)  The record reflects that the increase in Abilify

dosages coincides with a decrease in dosages of Wellbutrin and Lexapro (AR 405, 417),

indicating that overall, medication dosages did not change as drastically as plaintiff's briefing

suggests.

Given that the ALJ did consider the fact that plaintiff's medications were being

adjusted (AR 21), and given that ALJ's decision is entitled to deference, see Valentine, 574 F.3d

at 690; Bray, 554 F.3d at 1222; plaintiff has not met her burden and has not shown the ALJ erred

in rejecting Dr. Stamm's opinion.

2.   *The ALJ Did Not Err In Giving Weight To Dr. Cross' Opinion*

Plaintiff argues that "greater weight should have been given to the treating

doctor's opinion than those of the consultative and non-examining witnesses who failed to

consider a significant factor in [p]laintiff's treatment of her underlying mental condition,"

namely, the increase in prescribed dosage of Abilify.  (Mot. for Summ. J. at 17, 19-20.)  Plaintiff

argues that Dr. Cross' findings "were not based in substantial evidence" because they did not

"consider" plaintiff's increased dosage of Abilify, because they were rendered by a psychologist

instead of a psychiatrist, and because plaintiff disputes Dr. Cross' interpretation of a memory test

administered during the examination. (Id.)   Plaintiff's arguments are not well-taken.

First, as stated above, the issue before the undersigned is whether the ALJ gave

specific, legitimate reasons for rejecting Dr. Stamm's opinion, and whether those reasons are

supported by substantial evidence.  See Lester, 81 F.3d at 830-31; accord Valentine, 574 F.3d at

692.  As described above, the ALJ met this standard.

Second, plaintiff has not shown that the ALJ erred in crediting Dr. Cross' opinion.

The fact that Dr. Cross "failed to consider" plaintiff's increased dosage of Abilify does not render

Dr. Cross' opinion "not based on substantial evidence."  (Mot. for Summ. J. at 19.)  Dr. Cross'

opinions arose from her own clinical examination of plaintiff, and are therefore supported by

1 | substantial evidence.  See Orn, 495 F.3d at 632-33 (independent clinical findings by an

2 | examining doctor, such as findings based on objective medical tests that the treating physician

3 | has not himself considered, can be substantial evidence).  As described above, plaintiff has not

4 | compellingly shown that increased dosage of Abilify necessarily indicates a worsening mental

5 | condition in general or in plaintiff's specific case.  Plaintiff has not compellingly explained how

6 | a "failure to consider" plaintiff's Abilify dosage alone renders Dr. Cross' conclusions

7 | unsupported, given that those conclusions arose from Dr. Cross' independent examination.

8 |       Third, plaintiff's argument that Dr. Cross is a psychologist and not a psychiatrist

9 | and therefore "does not have the same knowledge" as the treating psychiatrists does not render

10 | Dr. Cross' opinion "not based on substantial evidence."  (Mot. for Summ. J. at 19.)  While

11 | different medical specializations can be taken into account in determining the weight to give to

12 | different medical opinions, see Orn, 495 F.3d at 631 ("Additional factors relevant to evaluating

13 | any medical opinion . . . include . . . the specialty of the physician providing the opinion"),

14 | plaintiff has not shown that the fact that one doctor is a psychologist while the other is a

15 | psychiatrist actually amounts to a different "specialization" under the applicable regulations.  See

16 | 20 C.F.R. § 404.1527(c)(5) ("Specialization. We generally give more weight to the opinion of a

17 | specialist about medical issues related to his or her area of specialty than to the opinion of a

18 | source who is not a specialist.")  Plaintiff has not cited any authorities supporting the argument

19 | that "as a psychologist, [Dr. Cross] cannot prescribe medicine and as such does not have the

20 | same knowledge as the five treating psychiatrists . . . who made the change in medication . . ."

21 | and therefore that Dr. Cross' opinion is "not based on substantial evidence."  (Mot. for Summ. J.

22 | at 19.)  In fact, "while more weight is generally accorded to the medical examiner having greater

23 | relevant expertise . . . this rule loses application when the distinctions become blurred, here as to

24 | the general assumption that a psychiatrist has greater expertise than a psychologist."  Nguyen v.

25 | Astrue, No. CIV S–07–1372 EFB, 2009 WL 747321, at *9 (E.D. Cal. March 20, 2009)

26 | (unpublished).  In this case, Dr. Cross' opinion is based on her own clinical findings, and

23

1   plaintiff has not shown Dr. Cross' inability to prescribe medication to be a significant difference

2   in "specialization" that would undercut Dr. Cross' findings.

3          Finally, the fact that plaintiff disputes Dr. Cross' assessment of the memory test

4   Dr. Cross administered to plaintiff does not render Dr. Cross' opinion "not based on substantial

5   evidence." (Mot. For Summ. J. at 19-20.)  Dr. Cross administered several memory tests to

6   plaintiff. (AR 269-74.)  Dr. Cross also conducted tests of plaintiff's attention and concentration,

7   abstract reasoning, and general "fund of knowledge."  (Id.)  Even if Dr. Cross erroneously

8   interpreted the "dog/paper/needle" recent recall test, which the undersigned does not determine

9   here, plaintiff has not provided any authority suggesting that such an error renders the entirety of

10  the Dr. Cross' opinion unsupported.  Absent more, the undersigned declines to make such a

11  finding.  Plaintiff has not shown that Dr. Cross' opinion were not based on substantial evidence.

12          3.     *The ALJ Did Not Err With Respect To The Opinions Of Dr. Harrison and*
                   *Dr. Joyce*
13

14          Plaintiff argues that the ALJ erred in giving "undue reliance" to opinions from Dr.

15  Harrison, a non-examining state agency physician who rendered an opinion in 2008, and Dr.

16  Joyce, an examining physician who rendered an opinion in 2005 (for the Second ALJ decision).

17  (Mot. for Summ. J. at 20.)  Plaintiff argues that neither physician "considered" plaintiff's

18  increased Abilify dosage, since the increase occurred after their examinations, and thus that the

19  ALJ erred in relying on those opinions.  (Id.)  Plaintiff argues that Dr. Joyce's opinion was

20  "rebutted by subsequent medical information." (Mot. for Summ. J. at 20.)  That "subsequent"

21  information is, again, plaintiff's increased Abilify dosage.

22          Plaintiff's argument is not well-taken.  Plaintiff's one-paragraph "argument" does

23  not clarify the way in which plaintiff alleges the ALJ erroneously "relied" on these opinions.  For

24  instance, the ALJ did not mention Dr. Joyce by name anywhere in her analysis.  Moreover, Dr.

25  Joyce's opinion was not technically before the ALJ, as it was rendered in 2005 and was not part

26  of the time period at issue in this action.  Further, as described above, although plaintiff argues

24

1  that an increase in Abilify dosage is itself sufficient to show changed circumstances and rebut the

2  presumption of continuing non-disability, plaintiff has not supported that argument.  Plaintiff has

3  not identified any evidence in the record supporting the proposition that increased Abilify

4  dosages (namely, from 5mg to 30 mg) signify a mental condition increasing in severity.  Plaintiff

5  also has not identified any legal authorities suggesting as much.  Accordingly, plaintiff has not

6  shown those medical opinions to be unsupported solely because they did not "consider" the

7  increase.

8              C.      Vocational Expert's Opinion

9              During the hearing, plaintiff's counsel questioned the vocational expert ("VE")

10  and added "additional mental limitations" to a hypothetical before the VE, but the ALJ found that

11  "the facts presented in [plaintiff's counsel's] additional questions are not supported by the

12  record" and rejected the expert's responses to those questions.  (AR 22-23.)  Plaintiff contends

13  that the ALJ erred in rejecting the VE's opinion that, in response to questioning by plaintiff's

14  counsel based on Dr. Stamm's opinion that plaintiff had a "poor" ability to perform certain work-

15  related tasks, plaintiff would be unable to perform past relevant work.  (Mot. for Summ. J. at 20-

16  21.)  Plaintiff argues that because the ALJ "erroneously rejected the limitations set by Dr. Stamm

17  . . . [a]s such her rejection of the VE's opinion was also erroneous."  (Id.)

18              Plaintiff's argument is entirely contingent on her arguments rejected above.

19  Plaintiff has not compellingly shown the ALJ erred in rejecting Dr. Stamm's opinion as

20  described above, and therefore, plaintiff has not shown the ALJ erred in rejecting the VE's

21  response to a hypothetical based on that opinion.

22              D.      Appeals Council's Decision Not To Remand To The ALJ

23              Plaintiff argues that "the Appeals Council erred in not remanding [her case] to the

24  ALJ" after receiving additional treatment notes that had not been part of the record before the

25  ALJ.  (Mot. for Summ. J. at 21-22.)  Plaintiff submitted the additional evidence of her increased

26  Abilify dosage (AR 382-423 (records dated Aug. 18, 2009, to April 2, 2010)) to the Appeals

Council on April 16, 2010 (Mot. for Summ. J. at 2).  Evidence submitted to and considered by the Appeals Council is not new but rather is part of the administrative record properly before the district court.  See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1164 (9th Cir. 2012). Here, the additional evidence takes the form of some treatment notes revealing that plaintiff's prescribed dosage of Abilify was 20 mg in October 2009 and that, at plaintiff's request, it increased to 30 mg on March 4, 2010.  (AR 385-423.)  The Appeals Council accepted the additional evidence and made it part of the record, apparently concluding that it was material within the meaning of 20 C.F.R. § 404.970(b).  (AR 1-4.)

Plaintiff's argument is not well-taken.  First, the undersigned does not have jurisdiction to assess the actions of the Appeals Council.  Courts "do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action."  Brewes, 682 F.3d at 1161 (citing Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1231 (9th Cir. 2011)).  When the Appeals Council declines review, "the ALJ's decision becomes the final decision of the Commissioner," and the district court reviews that decision for substantial evidence, based on the record as a whole."  Id. (citing Taylor, 659 F.3d at 1231; Tackett v. Apfel,180 F.3d 1094, 1097 (9th Cir. 1999)).

While the undersigned does not pass upon the actions of the Appeals Council, it is worth noting that under the applicable regulation,

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence *only where it relates to the period on or before the date of the administrative law judge hearing decision*. The Appeals Council shall evaluate the entire record including the new and material evidence submitted *if it relates to the period on or before the date of the administrative law judge hearing decision*. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

1   20 C.F.R. § 404.970(b) (emphasis added).  Here, much of the additional evidence of plaintiff's

2   increased Abilify dosage submitted to the Appeals Council actually postdates the ALJ's February

3   2010 decision.  (AR 385, 387, 389, 395, 415, 419 (treatment notes showing Abilify dosage at 30

4   mg, all of which are dated March 4, 2010, and March 5, 2010).)  Additional evidence will not be

5   considered if it does not relate to "the period on or before the date of" the ALJ's decision.  20

6   C.F.R. § 404.970(b).  Moreover, several other additional records are duplicates of documents that

7   had already been presented to the ALJ in the normal course and were thus part of the record the

8   ALJ considered.  (Compare AR 356, 354 with 413, 407 (Dr. Stamm's treatment notes dated Aug.

9   18, 2009, and Sept. 1, 2009, which reflect an Abilify dosage of 10 mg).)

10          Putting aside the duplicate documents and documents postdating the ALJ's

11  decision, the additional evidence appears to be some blank pages, some charts reflecting blood

12  test results, a document showing increases in some of plaintiff's medications and decreases in

13  others (AR 417 (reflecting Abilify dosage increasing to 20 mg and Lexapro dosage decreasing

14  from 40 mg to 20 mg on Oct. 9, 2009)), and treatment notes dated October 9, 2009 (AR 405) and

15  December 18, 2009 (AR 399), both reflecting an Abilify dosage of 20 mg.  The additional

16  evidence from the proper time period thus shows plaintiff's Abilify dosage at 10 mg — a dosage

17  that was already reflected in documents that were part of the record before the ALJ (e.g., AR 354,

18  56) — and increasing to 20 mg.  It is perhaps unsurprising that the Appeals Council declined to

19  remand the matter in light of this minimal additional evidence.

20          Notwithstanding plaintiff's framing her argument as challenging the action of the

21  Appeals Council, the undersigned will construe plaintiff's argument as instead challenging the

22  ALJ's decision on grounds that it is unsupported by substantial evidence.  Courts may consider

23  evidence submitted for the first time to the Appeals Council "to determine whether, in light of

24  the record as a whole, the ALJ's decision was supported by substantial evidence."  Brewes, 682

25  F.3d at 1162-63 (citing Lingenfelter, 504 F.3d at 1030 n.2 (noting that when the Appeals Council

26  considers new evidence in denying a claimant's request for review, the reviewing court considers

27

1   both the ALJ's decision and the additional evidence submitted to the Council); Harman v. Apfel,

2   211 F.3d 1172, 1180 (9th Cir. 2000) ("We properly may consider the additional materials

3   because the Appeals Council addressed them in the context of denying Appellant's request for

4   review.").

5           The undersigned finds that plaintiff's reconstrued argument is not well-taken for

6   the reasons described previously herein.  The undersigned's above review of the ALJ's decision

7   is based on a review of the entire record, including the additional documents given to the Appeals

8   Council.  Moreover, the undersigned also specifically considered the documents postdating the

9   ALJ's February 2010 decision.  The additional evidence does not render the ALJ's decision as

10  unsupported by substantial evidence.  Significantly, the additional evidence does not take the

11  form of a treating physician's opinion, and instead is a handful of treatment notes, blood test

12  results, duplicate documents and blank pages.  In any event, while the additional treatment notes

13  reveal an increase in plaintiff's medication, the notes simultaneously reveal that plaintiff was

14  positively responding to the medication and repeatedly reported feeling better.  (AR 387 (noting

15  that plaintiff "requests" increased Abilify and Topomax, "Abilify has helped mood" and "has

16  noticed improvement in depression [since] Abilify [and] would like to [increase] dose"); 399

17  ("[plaintiff] reports she has been doing well these past few weeks.  She feels her mood is more

18  stable, with less up's and down's" and "[plaintiff] feels overall increased dose of Abilify has

19  helped stabilize her mood, therefore will increase this further and titrate down Lexapro . . ."); 405

20  ("She believes increased dose of Abilify from 5 mg to 10 mg po qdaily has helped her feel a bit

21  more stable in her mood . . . [plaintiff has] been taking meds daily without s/e [side effects]").)

22  Accordingly, the additional evidence is consistent with the ALJ's determination that medication

23  controlled plaintiff's condition, despite the fact that the evidence confirms an increase in

24  prescribed Abilify dosage.  (AR 16.)  The undersigned has considered the additional evidence

25  and agrees with the Appeals Council that it does not negate the fact that there was substantial

26  evidence in the record to support the ALJ's decision.  See Lemmon v. Astrue, No. CV-11-1808-

PHX-GMS, 2012 WL 3778280 at *5 (D. Ariz. Aug. 31, 2012) (unpublished) (where Appeals Council considered additional evidence of a second MRI and a CT scan revealing changes to plaintiff's condition that "could be consistent with" plaintiff's prior ailment, the Council properly concluded that the evidence did not "negate the fact that there was substantial evidence in the record to support the ALJ's decision").

IV.    <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (Pl.'s Mot. for Summ. J., Dkt. No. 19) is denied;

2.    Defendant's cross-motion for summary judgment (Def.'s Opp'n & Cross-Motion for Summ. J., Dkt. No. 20) is granted; and

3.    The Clerk of Court shall enter judgment in the Commissioner's favor.

IT IS SO ORDERED.

DATED:  September 18, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE